410 F.2d 24
 Mary Elizabeth WHITNER, a single woman, Appellant,
v.
Mrs. Frederick W. DAVIS, Roy Patrick Wahle, Archie Wilson,
Joseph Panattoni and James Kendall, individually and as
Trustees of Central Washington State College; and James E.
Brooks, individually and as President of Central Washington
State College; John J. O'Connell, individually and as
Attorney General, State of Washington; Central Washington
State College; and State of Washington, Appellees.
 No. 22285.
 United States Court of Appeals Ninth Circuit.
 April 3, 1969.
 
 Mary E. Whitner, pro. per.
 Thomas K. Dalglish (argued), Asst. Atty. Gen., Ellensburg, Wash., John J. O'Connell, Atty. Gen., Olympia, Wash., for appellees.
 Before HAMLEY, MERRILL and HUFSTEDLER, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 This litigation is an outgrowth of the dismissal, on June 27, 1966, of Mary Elizabeth Whitner as a member of the faculty of the music department of Central Washington State College (College). Seeking redress, Mrs. Whitner, proceeding in propria persona, brought this action in the United States District Court for the Eastern District of Washington. The named defendants are the individual trustees and president of the College, the College, the state Attorney General, and the State of Washington.
 
 
 2
 In her complaint, Mrs. Whitner asserted that the district court had jurisdiction under the Federal Anti-Peonage Act, 42 U.S.C. 1994 (1964), the Civil Rights Act, 42 U.S.C. 1983 (1964), and various provisions of the Constitution including the First and Fourteenth Amendments. Plaintiff sought damages in the amount of $1,671,000, reimbursement for loss of interest, dividends, matching payments, social security and medicare payments, reimbursement for penalties and fees incurred, a declaration of her rights under the Constitution, and such other and further relief as may be deemed just and equitable.
 
 
 3
 All of the defendants joined in a motion to dismiss the action for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Insofar as the motion was grounded on failure to state a claim it must be regarded as a motion for summary judgment, since matters outside the pleading were presented by defendants and were not excluded by the court. See Rule 12(b), Federal Rules of Civil Procedure.
 
 
 4
 The district court granted the motion and dismissed the cause. This appeal followed.
 
 
 5
 Defendants moved in this court to dismiss the appeal, or affirm on motion, on the ground that the appeal is frivolous. We withheld action on the motion until after oral argument on the appeal. We now deny the motion.
 
 
 6
 According to the complaint, plaintiff was a member of the faculty of the College from October, 1958, to June 30, 1966, and enjoyed tenure after 1961 as provided for in the Faculty Code of Personnel Policy and Procedure (Code). She had an appointment to teach during both terms of the 1966 summer session and an appointment to teach for the academic year 1966 to 1967. On June 10, 1966, she received a registered letter from the president of the College advising her that, pursuant to section IX-E-1 of the Code, he would recommend to the board of trustees that she be dismissed, effective June 30, 1966. The President's letter set out four charges of unethical and unprofessional conduct, and one charge of insubordination, as the grounds to be relied upon in recommending her dismissal.[1]
 
 
 7
 In the same letter, the president of the College referred to a provision of the Code entitling plaintiff to apply for a hearing before either the 'Senate Personnel' committee or the board of trustees, and providing that her failure to apply for a hearing would be construed as acceptance of dismissal. Plaintiff did not apply or a hearing but, instead, wrote a letter to the president of the College explaining why she would not. The board met on June 27, 1966, and approved the recommendation for her dismissal, effective June 30, 1966.[2]
 
 
 8
 The order under review does not state the ground or grounds relied upon by the district court in dismissing the action. However, examination of the reporter's transcript of the argument on the motion to dismiss indicates that the district court rested its decision on two grounds: (1) plaintiff failed to exhaust her state court remedies, and (2) she failed to exhaust her state administrative remedies.
 
 
 9
 We consider first the district court ruling that it lacked jurisdiction because plaintiff had not exhausted her state court remedies. As before noted, plaintiff invoked the Civil Rights Act as one basis for district court jurisdiction.[3] This being the case, her failure to allege exhaustion of state court remedies neither defeated subject-matter jurisdiction under that Act, nor constituted a failure to state a claim thereunder. See Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492; Dodd v. Spokane County, 9 Cir., 393 F.2d 330, 334; York v. Story, 9 Cir., 324 F.2d 450, 456; Cohen v. Norris, 9 Cir., 300 F.2d 24, 34.
 
 
 10
 Although the plaintiff did file an action in the Washington state court, arising out of her dismissal from the College faculty, that action was dismissed and the appeal was not prosecuted. The complaint in this case was filed in the federal district court while the state proceedings were pending.[4] At most, however, the pendency of the state action would allow the district court, applying the doctrine of abstention, to hold the federal suit in abeyance while awaiting the outcome of the state action. It did not entitle the district court to dismiss the action with prejudice for lack of jurisdiction or for failure to state a claim.
 
 
 11
 We now consider the alternative ground relied upon by the district judge in dismissing this action for lack of jurisdiction, namely, that Mrs. Whitner had failed to exhaust her state administrative remedies.
 
 
 12
 In actuality, this is not a question of subject-matter jurisdiction. The problem is whether one who has not exhausted an available state administrative remedy can establish a claim under 42 U.S.C. 1983.
 
 
 13
 If the state administrative remedy here in question were designed to provide a means of obtaining relief from, or compensation for, a deprivation of civil rights which had already occurred, Mrs. Whitner would not have been required to exhaust it before instituting this civil rights action. See McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622, followed in Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647.
 
 
 14
 But the administrative remedy available to Mrs. Whitner was not designed to be remedial in this sense. Instead, it provided a means of forestalling a threatened future deprivation of civil rights. The notice Mrs. Whitner received from the president of the College on June 10, 1966, advising that he would recommend that she be dismissed effective June 30, 1966, did not deprive her of any civil right. Had she taken advantage of the opportunity afforded her to apply for a hearing before the 'Senate Personnel' committee or the board of trustees, she might have persuaded College authorities not to discharge her. In that event she would have had nothing to complaint about in either a state or federal court.
 
 
 15
 Instead, Mrs. Whitner expressly declined to apply for such a hearing although she was advised, in accordance with the Code, that failure to apply for a hearing would be construed as acceptance of dismissal. College authorities were thereby deprived of an opportunity to consider any facts or argument she might have been able to submit which conceivably could have led them to retain her on the faculty.[5]
 
 
 16
 What is said above is said on the assumption that the administrative hearing in question would have provided Mrs. Whitner with a fair opportunity to present her version of the facts and law. The record before us does not reveal the nature and scope of the hearing which was offered to her and in her complaint it is alleged that this administrative procedure was inadequate and contrary to both state and federal law in numerous respects.
 
 
 17
 If the administrative remedy designed to forestall a threatened discharge was adequate, Mrs. Whitner's refusal to make use of it constituted an acceptance of the discharge and prevents her from establishing a claim under the Civil Rights Act. This ought not, however, to have been determined on a motion to dismiss for failure to state a claim or on motion for a summary judgment, because the adequacy of the state remedy in question is not ascertainable from this record. It follows that the disposition of this question must await further proceedings in the district court unless the cause was in any event properly dismissed for one or more of the additional reasons urged by defendants, and now to be considered.
 
 
 18
 Among other things, defendants advance two reasons why, in their view, the district court did not have personal jurisdiction of defendant State of Washington. The first is that the State of Washington has not waived its immunity under the Eleventh Amendment from suit in a federal court by a citizen of the state. The second is that, assuming the within the meaning of 42 U.S.C. of jurisdiction here, a state is not a 'person' within the meaning of 42 U.S.C. 1938. Both of these reasons are sound.
 
 
 19
 The Eleventh Amendment immunizes a state from suit in a federal court by a citizen of that state, and this immunity is not affected by the fact that the case may be one arising under the Constitution and laws of the United States. Parden v. Terminal Ry. Co., 377 U.S. 184, 186, 84 S.Ct. 1207, 12 L.Ed.2d 233; Hans v. Louisiana, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842; Clark v. State of Washington, 9 Cir., 366 F.2d 678, 680. While a state may waive such immunity, there is nothing to indicate that the State for Washington has done so, at least insofar as actions of the kind now before us are concerned. RCW 4.92.010 provides, as a state jurisdictional requirement, that the state may be sued only in the superior court of Thurston County. State ex rel. Thielicke v. Superior Court, 9 Wash.2d 309, 114 P.2d 1001.
 
 
 20
 A state is not a 'person' within the meaning of 42 U.S.C. 1983. Williford v. People of California, 9 Cir., 352 F.2d 474, 476.
 
 
 21
 The action was therefore correctly dismissed insofar as defendant State of Washington is concerned.
 
 
 22
 Defendants rely upon these same two reasons for urging that the district court did not have personal jurisdiction of defendant College.
 
 
 23
 While the College is a state agency, it is not protected by the state's Eleventh Amendment immunity. See Dorsey v. State Athletic Commission, E.D.La., 168 F.Supp. 149, 151, aff'd 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028; McCoy v. Louisiana State Board of Education, 5 Cir.,332 F.2d 915, 917; Id., 345 F.2d 720. However, as a state agency, it is not subject to liability under the Civil Rights Act because it is not a 'person' within the meaning of 42 U.S.C. 1983.
 
 
 24
 The action was therefore properly dismissed insofar as defendant College is concerned.
 
 
 25
 Defendants also rely upon the Eleventh Amendment in urging that the district court did not have jurisdiction over the board of trustees, the president of the College or the Attorney General of the state. The argument here, in effect, is that this is in actuality a suit against the State of Washington and therefore the state's immunity provides a protective umbrella for the board and the personal defendants as pro forma parties.
 
 
 26
 Under some circumstances, a suit may be held to be one against a state even if the state is not named as a defendant. See In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216. However, we do not regard plaintiff's claim against the board of trustees, the president of the College, and the Attorney General as an effort on her part to give the federal court personal jurisdiction over the state. As we view it, plaintiff's reference to the board of trustees is intended only as a means of making collective reference to the individual trustees, each of whom is named a defendant.
 
 
 27
 Individuals, sued in their capacity as trustees of a state agency, are not protected by the Eleventh Amendment any more than the agency itself is protected by that Amendment. Moreover, the allegations and prayer of plaintiff's complaint make it clear that this is not intended to be exclusively a suit against the State of Washington. Plaintiff seeks monetary damages and unspecified equitable relief against the personal defendants as individuals as well as in their capacities as president and trustees of the College or Attorney General of the state.
 
 
 28
 Defendants' contention that the federal district court did not have subject-matter jurisdiction of this suit under the Civil Rights Act has been discussed above, although we there pointed out that the particular points defendants urged actually related to statement or establishment of a claim under that Act, rather than subject-matter jurisdiction under the Act. Defendants also argue that the district court did not have subject-Matter jurisdiction under the Federal Anti-Peonage Act, 42 U.S.C. 1994.
 
 
 29
 Assuming that the district court has subject-matter jurisdiction to grant relief under that statute, we are of the view that plaintiff has not stated, and cannot state, a claim thereunder.
 
 
 30
 Peonage is defined as 'a status or condition of compulsory service, based upon the indebtedness of the person to the master. The basal fact is indebtedness.' Clyatt v. United States, 197 U.S. 207, 215, 25 S.Ct. 429, 430, 49 L.Ed. 726. The legislative purpose of that Act was to implement the Thirteenth Amendment by striking down all laws and usages in the states and territories which attempt to maintain and enforce the involuntary service of any person as a peon, in liquidation of any debt. See In re Johnson, 71 Wash.2d 245, 427 P.2d 968, 973-974, and cases there cited. Nothing alleged in the complaint states a claim under the Act as so construed nor does there seem to be any likelihood that plaintiff could state such a claim.
 
 
 31
 Defendants also contend that plaintiff has failed to state a claim under the Civil Rights Act because there is no constitutional right to public employment.
 
 
 32
 While there may be no constitutional right to public employment as such, there is a constitutional right to be free from unreasonably discriminatory practices with respect to such employment. Rolfe v. County Board of Education of Lincoln County, Tennessee, 6 Cir., 391 F.2d 77, 80; Wall v. Stanly County Board of Education, 4 Cir., 378 F.2d 275, 277. It is also established that, apart from discrimination, public employment may, under some circumstances, be so supervised and controlled as to raise the question of whether there has been an impairment of constitutional rights. See Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811.
 
 
 33
 Plaintiff has not, however, alleged that the charges against her were unfounded; nor has she alleged that her conduct was protected under the free speech or any other guarantee of the Constitution. Likewise in her complaint, plaintiff has not specifically sought reinstatement. Plaintiff has alleged, however, in a very general manner, that the state, having undertaken to provide administrative procedures governing the disciplining and discharge of faculty members, formulated and administered them in a manner which she could not utilize without surrendering certain of her constitutional rights.
 
 
 34
 We do not now undertake to assess the legal sufficiency of these allegations. As noted above, the district court did not dismiss the action for failure to state a claim. If that court had done so, plaintiff would have had an opportunity to amend her complaint in an attempt to overcome the deficiency.
 
 
 35
 No responsive pleading has yet been filed by defendants, and under Rule 15(a), Federal Rules of Civil Procedure, plaintiff was therefore entitled to amend her complaint once as a matter of course. Lacking assistance of counsel and obviously lacking knowledge of the procedure available, and perhaps also confused by the grounds for dismissal relied upon by the district court, plaintiff chose to appeal rather than file an amended complaint. Under these special circumstances we think plaintiff should be afforded an opportunity to file an amended complaint, hopefully with the assistance of counsel. An amended complaint cannot save her cause, however, if it is determined in the remanded district court proceedings that plaintiff cannot, in any event, establish a claim under the Civil Rights Act because she failed to exhaust adequate state administrative remedies designed to test her threatened discharge.
 
 
 36
 Finally, defendants urge that this action was properly dismissed because the entry of judgment against plaintiff in the state action growing out of plaintiff's discharge from the College faculty is res judicata.
 
 
 37
 In the state action plaintiff grounded her claim in part upon her employment contract, in part upon rights and procedures provided by state statute and regulations and the state constitution, and in part upon rights guaranteed by the Constitution of the United States. Without reaching the merits, the state trial court dismissed all aspects of her claim on the ground that she failed to exhaust her administrative remedies. As before noted, plaintiff's appeal to the state supreme court was dismissed for lack of prosecution.
 
 
 38
 Under ordinary circumstances a state court adjudication that a teacher was not wrongfully discharged would be res judicata in a subsequent federal civil rights action growing out of the same incident. See Frazier v. East Baton Rouge Parish School Board, 5 Cir., 363 F.2d 861. But here: (1) the adverse state adjudication was based solely upon failure to exhaust state administrative remedies designed to thwart a threatened future deprivation of rights; (2) such a failure precludes relief under the Civil Rights Act only if the administrative remedy was fair and adequate as described above; (3) the state court made no determination as to the adequacy of the remedy and, in any event, a federal court would not be bound by such a determination where the question is whether relief under the Civil Rights Act is available. Under these circumstances we do not believe that the state judgment forecloses, on principles of res judicata, this civil rights action.
 
 
 39
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The charges were as follows:
 '1. a) Unethical and Unprofessional Conduct. Writing and wide dissemination of charges which discredited Central Washington State College, the faculty and students thereof. 'b) Public, written allegations of misconduct and illegality on the part of Central Washington State College, its faculty and students without supporting evidence of such alleged misconduct and illegality. 'c) Writing and disseminating to members of the public, letters charging certain members of the faculty and student body with immoral and illegal activities without notifying or confronting the named individuals concerning the truth of such charges, which acts tend to destroy the morale, efficiency and reputation of the individuals so named. 'd) Writing and disseminating to members of the public, letters alleging that Central Washington State College, its administration and faculty, are derelict in their duties of education and are encouraging immoral and unethical conduct without stating any evidence supporting such charges.
 '2. Insubordination Failure to answer, specifically, questions propounded in written requests by the Dean of Instruction regarding the use of your class time for the discussion of material not directly or indirectly related to the subject being taught.'
 
 
 [2]
 In her complaint, plaintiff did not question the grounds for her discharge but dealt almost exclusively with the way College administrative procedures pertaining to the discharge of faculty members were formulated and, in her case, administered
 
 
 [3]
 Defendants contend that since plaintiff failed to make express reference in her complaint to 28 U.S.C. 1343(3) (1964), under which district courts have jurisdiction to entertain civil rights actions, she has not effectively invoked jurisdiction under the Civil Rights Act. However, since the complaint plainly indicates that plaintiff intended to invoke the Civil Rights Act, her failure to cite 28 U.S.C. 1343(3) is of no consequence
 
 
 [4]
 The state appeal was dismissed for lack of prosecution on March 1, 1968
 
 
 [5]
 While considered in an entirely different context, the reasons why litigants should exhaust administrative remedies designed to forestall threatened governmental action as a precedent to resort to courts after the action has occurred, are comprehensively discussed in Craycroft v. Ferrall, 9 Cir., 408 F.2d 587